IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FELTON FOSTER                              *

    Plaintiff                              *

    v.                                     *          Civil Action No.: RDB-08-2505

MARYLAND STATE POLICE, *et al.*            *

    Defendants.                            *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiff Felton Foster filed the present lawsuit alleging that Defendants Maryland State Police and Colonel Terrance Sheridan unlawfully discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Article 24 of the Maryland Declaration of Rights. Now pending before this Court is Defendants' Motion to Dismiss the Second Amended Complaint (Paper No. 38). This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons set forth below, the Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Specifically, all of Foster's claims are dismissed with the exception that his claim under § 1983 may proceed against Colonel Sheridan in his official capacity for prospective injunctive relief.

## BACKGROUND

Plaintiff Felton Foster ("Foster") alleges that he applied to become a Maryland State Trooper on three separate occasions and that each of his applications was improperly denied

because of tattoos that he has on both of his arms.  He alleges that he was informed by First

Sergeant Hayes, a Recruiter in the Human Resources Division ("HRD"), that the tattoos

represented an affiliation with an African-American organization named the "New Black

Panthers" and a gang in the District of Columbia known as the "Delaware Avenue Gang."  To

allay these concerns, Foster offered to conceal the tattoos, but he claims that decision-makers in

the HRD rejected his proposal.  Foster claims that there are similarly-situated non-African-

Americans that serve as state troopers, despite the fact that they bear tattoos that may be

perceived to represent an affiliation with gangs or ethnic organizations.  In addition, he argues

that the Defendant Maryland State Police's ("MSP") justification for denying his applications on

the basis of a prior arrest was pretexual.  Foster claims that the prior arrest cited by the MSP was

improper and that his criminal record had been expunged.

Foster filed a charge of discrimination with the U.S. Equal Employment Opportunity

Commission ("EEOC") on January 15, 2008, and he received his Right to Sue Notice on June

25, 2008.  On September 24, 2008, Foster filed suit against the MSP and Colonel Terrence

Sheridan ("Sheridan"), the Superintendent of the MSP, in his official and individual capacities.

Foster's Second Amended Complaint contains four separate counts: Count I – failure to hire

based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et

seq.* ("Title VII"); Count II - denial of equal protection under the Equal Protection Clause of the

United States Constitution and Article 24 of the Maryland Declaration of Rights; Count III -

unlawful race discrimination claim, asserted through 42 U.S.C. § 1983; and Count IV - unlawful

race discrimination under 42 U.S.C. § 1981.

## STANDARD OF REVIEW

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and therefore a Rule 12(b)(6) motion tests the legal sufficiency of a complaint.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Id.* at 555.  Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See id.* (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)).

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.*  The Supreme Court has recently explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  On a spectrum, the plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Id.*  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  At bottom, the court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## ANALYSIS

I.      **Title VII Claim**

Prior to filing a Title VII claim in federal court, "a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC." *Edelman v. Lynchburg College*, 228 F.3d 503, 506 (4th Cir. 2000).  In Maryland, a deferral state,[1] a Title VII claim of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory action.  42 U.S.C. § 2000e-5(e)(1).  "If a charging party fails to comply with this statutorily mandated filing period, alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not subsequently be challenged in a Title VII suit."  *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp. 2d 587, 592 (D. Md. 2000).  *See also Beall v. Abbott Laboratories*, 130 F.3d 614, 620 (4th Cir. 1997) ("[i]ncidents outside the statutory window are time-barred").  Courts have strictly enforced the timeliness requirements that govern actions alleging employment discrimination.  *Tangires v. Johns Hopkins Hosp.*, 79 F. Supp.2d 587, 597 (D. Md. 2000); *see also Christian v. City of Annapolis*, No. 06-1119, 2006 WL 2294539, at *1 (D. Md. Aug. 9, 2006) (dismissing discrimination claim as untimely because it was not filed with the EEOC until 301 days after the alleged discriminatory act); *Langford v. Yale Univ. School of Medicine*, 39 Fed. Appx. 683, 685 (2d Cir. 2002) (affirming dismissal of discrimination claim that was filed with the EEOC two days after the 300-day deadline).

Foster has alleged that his most recent application for employment with the MSP was denied on March 16, 2007.  *See* Supplement to Complaint ¶ 4.  Thus, Foster's charge of discrimination should have been filed by January 10, 2008—the statutorily-imposed 300-day

---

[1]  A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof."  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2).  Maryland is classified as a deferral state due to the Maryland Commission on Human Relations (MCHR), a state agency that is capable of providing relief from discrimination.

deadline for filing suits under Title VII.  Defendants have submitted a copy of Foster's charge of

discrimination, which clearly indicates that it was filed with the EEOC and the MCHR on

January 15, 2008—five days after the deadline.  *See* Ex. 1 to Defs.' Mot. to Dismiss.  Foster's

discrimination claim under Title VII is therefore dismissed as time-barred.

## II.     Claim under Article 24 of the Maryland Declaration of Rights

In Count II of his complaint, Foster has alleged that due to the actions of the Defendants,

he was denied equal protection under the law in violation of Article 24 of the Maryland

Declaration of Rights.[2]

Article 24 of the Maryland Declaration of Rights is considered the state's constitutional

equivalent to the Fourteenth Amendment to the U.S. Constitution.  *See Gilchrist v. State*, 340

Md. 606, 667 A.2d 876, 884 n.3 (Md. 1995) (noting that "although he Maryland Constitution

does not contain an express guarantee of equal protection, it is well established that Article 24

embodies the same equal protection concepts found in the Fourteenth Amendment to the U.S.

Constitution" (internal citations omitted)).   "[A] violation of Article 24 of the Maryland

Declaration of Rights may be redressed through a common law action for damages."  *Ashton v.

Brown*, 339 Md. 70, 660 A.2d 447, 462 (Md. 1995).

The Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12-101, *et

seq.*, serves as a limited waiver of sovereign immunity and it provides the sole means by which

the State of Maryland and its personnel may be sued in tort.  Under the MTCA, plaintiffs are

required to file a written claim with the State Treasurer, or his designee, within one year after

injury in order to pursue a claim against the State or its personnel.  Md. Code Ann., State Gov't §

---

[2] Article 24 of the Maryland Declaration of Rights provides:
>    That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, . . .
>    or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the
>    land.

12-106(b).  If a plaintiff fails to comply with this notice of claim requirement, the State's

sovereign immunity remains intact, and the suit must be dismissed as premature.  *See Rivera v.*

*Prince George's County Health Dep't*, 102 Md. App. 456, 649 A.2d 1212, 1219-20 (Md. 1994).

Foster has alleged that his most recent application for employment was denied by the MSP

on March 16, 2007, therefore he was required to file a claim with the State Treasurer within one

year of this date.  *See* Supplement to Complaint ¶ 4.  However, Foster never filed any claim with

the State Treasurer's Office that relates to the allegations in this case.  *See* Ex. 2 to Defs.' Mot. to

Dismiss.  Accordingly, Foster's claim under Article 24 of the Maryland Declaration of Rights is

hereby dismissed.

### III.      Claim under 42 U.S.C. § 1983

Foster has asserted a § 1983[3] claim pursuant to the Equal Protection Clause of the

Fourteenth Amendment[4] against the MSP and Colonel Sheridan, the Superintendent of the MSP,

in his official and individual capacities.

#### A.  Maryland State Police Defendant

It is well-established that a State, and its constituent agencies, may not be held liable

under Section 1983 because it is not a "person" under the statute.  *Will v. Michigan Dep't of*

*State Police*, 491 U.S. 58, 71 (1989).  In addition, state entities are immune from such actions

under the Eleventh Amendment unless the State has expressly waived such immunity.  *Id.* at 66.

The MSP is considered to be the equivalent of the State of Maryland for purposes of § 1983, *see*

---

[3]  Section 1983 of Title 42 of the United States Code provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State
> . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the
> party injured . . . .

[4]  In Count II, Foster alleges that he was denied equal protection under the law in violation of the Fourteenth
Amendment of the U.S. Constitution and Article 24 of the Maryland Declaration of Rights. However, 42 U.S.C. §
1983, which serves as the statutory basis for his claim under the U.S. Constitution, is cited in Count III.  Thus, after
construing the complaint in the light most favorable to Foster, this Court considers Count III as alleging an equal
protection claim under 42 U.S.C. § 1983.

*Cleary v. Green*, 2007 U.S. Dist. LEXIS 95751, n.1 (D. Md. Nov. 15, 2007), and there is no

indication that the State waived its immunity in this case.  Thus, this Court lacks jurisdiction over

Foster's § 1983 claim against the MSP.

### B.  Colonel Sheridan

Foster seeks to hold Sheridan personally liable in his individual capacity under § 1983 for

the denial of Foster's application for employment with the MSP.  "To state a claim under § 1983,

a plaintiff must allege the violation of a right secured by the Constitution and laws of the United

States, and must show that the alleged deprivation was committed by a person acting under color

of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  *See also, Kentucky v. Graham*, 473 U.S.

159, 166 (1985) ("to establish personal liability in a § 1983 action, it is enough to show that the

official, acting under color of state law, caused the deprivation of a federal right").  However,

Foster has not alleged that Sheridan played any direct role in denying his employment

application.  A plaintiff cannot sustain a cause of action under § 1983 under a theory of

*respondeat superior.  See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691-

94 (1978).  Because Foster has not shown any direct causal link between any action or omission

on the part of Sheridan, and Foster's denial of employment, the § 1983 claim against Sheridan in

his individual capacity cannot be sustained.

In addition, Foster's official capacity claim against Sheridan as Superintendent of the

MSP is barred to the extent that it seeks monetary damages, as the State's Eleventh Amendment

immunity extends to state officials sued in their official capacities.  *See Kentucky v. Graham*, 473

U.S. 159, 169-70 (1985).  *See also Will*, 491 U.S. at 71 ("a suit against a state official in his or

her official capacity is not a suit against the official but rather is a suit against the official's

office").  Nevertheless, Foster is allowed to pursue prospective injunctive relief against Sheridan

to prevent ongoing violations of federal law.  *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908)

(holding that the Eleventh Amendment does not preclude suits against state officers for

injunctive relief).

In an official-capacity suit under § 1983, a plaintiff must establish that the government

entity was the "moving force" behind the deprivation, in that the "policy or custom" of the entity

or official, "played a part in the violation of federal law."  *Graham*, 473 U.S. at 166.  Courts

have found that such a policy or custom may be found in "formal or informal ad hoc 'policy'

choices or decisions" made by officials who are authorized to conceive of such policies.  *Spell v.*

*McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987).  Foster has alleged that the MSP has a policy,

overseen by Sheridan, of discriminating against African-Americans who bear tattoos that may

indicate an affiliation with gangs or ethnic organizations.  *See* Second Amended Complaint ¶ 30.

He adds that Sheridan has hired and retained non-African-Americans as state troopers despite the

fact that they may bear tattoos that could be similarly perceived to represent an affiliation with

gangs or ethnic groups.

To satisfy the pleading standard for official capacity suits, a plaintiff need only "set forth

a plain statement of his claims giving the [official] fair notice of what his claims [were] and the

grounds upon which they [rested]."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.

1999).  As a result, this Court finds that Foster's official capacity claim against Sheridan seeking

prospective injunctive relief survives Defendants' motion to dismiss.

**IV.     Claim under 42 U.S.C. § 1981**

Finally, Foster has filed a cause of action under 42 U.S.C. § 1981 against Sheridan,

claiming that he was denied employment on the basis of race.  Section 1981(a) provides that:

"All persons within the jurisdiction of the United States shall have the same right in every State

and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  This statute may serve as a basis to assert an employment discrimination claim based upon failure to hire.  *See Stock v. Universal Foods Corp.*, 817 F. Supp. 1300, 1305 (D. Md. 1993).

However, it is clear that "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'"  *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)).  In determining whether a defendant is a "state actor," courts inquire into "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).  Sheridan is the Superintendent of the MSP, and he is alleged to have acted "'under color' of the authority of the State of Maryland."  *See* Second Amended Complaint ¶ 24.  Therefore, this Court finds that Sheridan is a state actor, and as such, he is not susceptible to suit under § 1981 in either his official or individual capacity.  *See Victors v. Kronmiller*, 553 F. Supp. 2d 533, 543 (D. Md. 2008) (stating that § 1983 is the exclusive federal remedy for the violation of rights guaranteed by § 1981 and that state actors are not amenable to suit under § 1981 in either their official or individual capacities).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss the Second Amended Complaint (Paper No. 38) is GRANTED in part and DENIED in part.  Specifically, Counts I, II, and IV are DISMISSED and Count III is DISMISSED against the Maryland State Police and against Colonel Sheridan in his individual capacity.  Foster may proceed with his claim under Count III against Colonel Sheridan in his official capacity for prospective injunctive relief.  A separate Order follows.

Date: January 20, 2010                    /s/_____
                                          Richard D. Bennett
                                          United States District Judge